

## THE ATTORNEY GENERAL
### OF TEXAS

PRICE DANIEL
ATTORNEY GENERAL

AUSTIN 11, TEXAS
May 19, 1947

Hon. Claud Gilmer
Committee on Appropriations
House of Representatives
Austin, Texas

Opinion No. V-208

Re: Construction of Section
49a of Article III State
Constitution

Dear Sir:

Your letter request reads, in part, as follows:

"The Appropriation Committee of the House has directed the following inquiry as to the procedure contemplated and required under Section 49a of Article 3 of the State Constitution, the amendment of 1942 which requires the State to operate on a cash basis.

"Section 49a requires the State Comptroller to furnish each regular session of the Legislature with a statement of the revenues to be available during the coming biennium and from which appropriations for operation of State government will be made.

"The second paragraph of the Section contains four sentences, numbered for reference '1,' '2,' '3,' and '4' and reading as follows:

"Sentence '1.' 'From and after January 1, 1945, save in the case of emergency and imperative public necessity and with a four-fifths vote of the total membership of each House, no appropriation in excess of the cash and anticipated revenue of the funds from which such appropriation is to be made shall be valid.

"Sentence '2.'  'From and after
January 1, 1945, no bill containing
an appropriation shall be considered
as passed or be sent to the Governor
for consideration until and unless
the Comptroller of Public Accounts
endorses his certificate thereon
showing that the amount appropriated
is within the amount estimated to be
available in the affected funds.

"Sentence '3.'  'When the Comp-
troller finds an appropriation bill
exceeds the estimated revenue he
shall endorse such finding thereon
and return to the House in which same
originated.

"Sentence '4.'  'Such information
shall be immediately made known to
both the House of Representatives
and the Senate and the necessary
steps shall be taken to bring such
appropriation to within the revenue,
either by providing additional revenue
or reducing the appropriation.'

"If sentence '1' had followed sen-
tence '4,' and expressly provided that the originat-
ing House would have a further alternative of again
passing the appropriation bill, knowing and intend-
ing that same would become a deficit, the procedure
would be clear.

"It is considered that a full construc-
tion of the quoted section should be obtained so
that both Houses of the Legislature, the Comp-
troller, and the Governor will be in agreement and
in position to contemplate the action that will be
taken when an appropriation bill exceeds available
revenue, and so that all will understand the posi-
tion that such a bill will occupy.

"For the purpose of clarifying the in-
formation desired, we mention the following ques-
tions:

"A. When an appropriation bill, with an 'emergency and imperative public necessity' clause in it, is passed in the usual manner of first consideration, and receives a record vote of 4/5th or more of the total membership of each House, will it then become effective without return for reconsideration and in the light of information from the Comptroller that same will create a deficit?

"B. How can sentence '1' and sentence '4' be construed so that same will not be held in conflict nor one to limit the other?

"C. Will sentence '1' be considered as furnishing a further alternative to sentence '4' so that the Legislature would not be controlled by a vote within the requirements of sentence '1,' taken by both Houses without the knowledge that such bill would create a State deficit?

"D. In the event it is considered that the provisions of sentence '1' apply and control upon the first consideration of a bill, then would such action preclude consideration by the Comptroller in accordance with sentence '2' and sentence '3'?

"E. Will a statement and expressed finding by the Legislature of an 'emergency and imperative public necessity' be sufficient to justify the requirement of sentence '1,' or will it be necessary to recite specific facts and necessiteus circumstances; and if so, what minimum requirements will control in this respect?

"F. If it is considered that an appropriation bill, found to create a deficit, will be returned for subsequent

consideration in each House, what
status will it occupy? Will it be
considered as a new and an original
bill? May the appropriation be re-
duced by either House? Is the bill
subject to amendment otherwise?
Could, for illustration, a provision
reciting 'emergency and imperative
public necessity' be added to the
bill?

"Q. Does the requirement of '4/5ths
vote of the total membership of each
House' mean 120 or more affirmative
votes in the House and 28 or more
affirmative votes in the Senate?

"Thanking you to advise in reference to
the above questions and such other informa-
tion as you may consider necessary and of
advantage in connection with this subject. . ."

Section 49a, Article 3 Constitution of
Texas, as adopted in election November 3, 1942 is as fol-
lows:

"It shall be the duty of the
Comptroller of Public Accounts in advance
of each Regular Session of the Legislature
to prepare and submit to the Governor and to
the Legislature upon its convening a state-
ment under oath showing fully the financial
condition of the State Treasury at the close
of the last fiscal period and an estimate of
the probable receipts and disbursements for
the then current fiscal year. There shall
also be contained in said statement an itemi-
zed estimate of the anticipated revenue based
on the laws then in effect that will be re-
ceived by and for the State from all sources
showing the fund accounts to be credited
during the succeeding biennium and said state-
ment shall contain such other information as
may be required by law. Supplemental state-
ments shall be submitted at any Special Ses-
sion of the Legislature and at such other
times as may be necessary to show probable
changes.

"From and after January 1, 1945, save
in the case of emergency and imperative

public necessity and with a four-fifths vote of the total membership of each House, no appropriation in excess of the cash and anticipated revenue of the funds from which such appropriation is to be made shall be valid. From and after January 1, 1945, no bill containing an appropriation shall be considered as passed or be sent to the Governor for consideration until and unless the Comptroller of Public Accounts endorses his certificate thereon showing that the amount appropriated is within the amount estimated to be available in the affected funds. When the Comptroller finds an appropriation bill exceeds the estimated revenue he shall endorse such finding thereon and return to the House in which same originated. Such information shall be immediately made known to both the House of Representatives and the Senate and the necessary steps shall be taken to bring such appropriation to within the revenue, either by providing additional revenue or reducing the appropriation.

"For the purpose of financing the outstanding obligations of the General Revenue Fund of the State and placing its current accounts on a cash basis the Legislature of the State of Texas is hereby authorized to provide for the issuance, sale, and retirement of serial bonds, equal in principal to the total outstanding, valid, and approved obligations owing by said fund on September 1, 1943, provided such bonds shall not draw interest in excess of two (2) per cent per annum and shall mature within twenty (20) years from date. Adopted election Nov. 3, 1943."

The courts have not construed the provisions of Section 49a, Article 3 of our Constitution.

In Attorney General's Opinion O-6497 we hold, "that in cases of emergency and imperative public necessity the Legislature may, by a four-fifths vote of the total membership of each House, pass an appropriation in excess of cash and anticipated revenue."

". . . that a four-fifths vote would not be evidence that an emergency and

an imperative public necessity existed.
Section 32, Article 3 deals with the
question of 'imperative public necessity'
in suspending the rule requiring bills
to be read on three several days, and
this section provides that this necessity
shall be stated in a preamble or in a body
of the bill. Section 39, Article 3 deals
with the question of 'emergency' in pro-
viding for the time at which a bill shall
take effect, and this section states that
an emergency must be expressed in a pre-
amble or in the body of the Act. It is
true that no such requirement is contained
in Section 49a, but we think, in view of
the above mentioned sections of the Consti-
tution, the safe plan would be to state
the emergency and imperative public necessity
either in the preamble or in the body of the
bill."

In our Opinion No. O-6738a we said:

"Section 49a of Article III is
what is popularly known as the 'pay as you
go' amendment to the Constitution of Texas
duly adopted in an election held November 3,
1942. It is generally understood, as is
manifest from the first paragraph of Section
49a, not quoted, that the purpose of this
amendment was to keep in approximate balance
the anticipated annual income and expendi-
tures of the State of Texas, a very whole-
some purpose. Or stated in another way, the
evil sought to be remedied was the appropria-
tion and disbursement of moneys in excess of
anticipated or actual income. . . .

"Section 49a clearly provides that
bills containing appropriations must have been
referred to the Comptroller of Public Ac-
counts and must contain his endorsement or
certificate thereon (which admittedly were
not done in this case) showing that the amount
appropriated is within the amount estimated to
be available in the affected funds, 'save
in the case of emergency and imperative public
necessity' and with a four-fifths vote of (1)

the total membership of (2) each House."

In giving you our opinion, we will not attempt to answer your questions categorically, as we believe we can better clarify the matters inquired about by illustrations.

An appropriation bill passes both Houses with a four-fifths vote of the total membership of each House. The amount appropriated is in excess of the cash and anticipated revenue of the funds from which such appropriation is made. The bill recites that an emergency and imperative public necessity (stating what it is) requires that this appropriation be made notwithstanding the fact that it exceeds the estimated revenue. This bill would be considered passed, and if not vetoed, would become effective. The provisions of said Section 49a you designate as "Sentence '2'", "Sentence '3'" and "Sentence '4'" would not be applicable.

The same appropriation bill containing the emergency and imperative public necessity clause (as outlined above), is passed by the Legislature by a vote of less than four-fifths of the total membership of each house, or it passes by a four-fifth vote of the total membership of each house but does not contain the emergency and imperative public necessity clause (as outlined above). This bill so passed would be subject to the provisions you designate as "Sentence '2'", "Sentence '3'" and "Sentence '4'". That is, the Comptroller would find that the appropriation bill exceeds the estimated revenue and would endorse such finding on the bill and return it to the House in which it originated and immediately make such information known to both Houses. By the express language of that part of said section you designate as "Sentence '2'" such bill would not be considered as passed. It is not a new bill. It would be subject to amendment as to either form or substance. The Legislature would then have three methods by which it could legally pass such appropriation bill and make it effective, that is, (1) the bill could be amended so as to include the emergency and imperative public necessity clause (as outlined above), if the bill as originally passed did not contain same, and then pass same by a four-fifths vote of each House, or (2) the Legislature could amend the bill by reducing the appropriation so the amount would not be in excess of the cash and anticipated revenue of the funds from which the appropriation is made, or (3) the Legislature could pass an additional revenue act that would increase the anticipated revenue to such extent that the amount so appropriated in the bill would

not exceed the cash and anticipated revenue of the funds from which such appropriation is made.

The above construction gives full force and effect to all the language employed in said section of the Constitution and is in accordance with the rule of construction announced by the Court in Cordova v. State, 6 Crim. App. 212, 220; "In expounding a constitutional provision, such construction should be employed as will prevent any clause, sentence, or word from being superfluous, void or insignificant." Furthermore, it harmonizes all provisions.

## SUMMARY

In order for a bill to be valid that makes an appropriation in excess of the cash and anticipated revenue of the funds from which such appropriation is to be made, it must contain an emergency and imperative public necessity clause (stating the emergency and necessity that requires the appropriation notwithstanding it exceeds such cash and anticipated revenue), and it must be passed by a four-fifths vote of the total membership of each House. If a bill that makes an appropriation in excess of the cash and anticipated revenues is passed with a less vote than four-fifths of the total membership of each House, or passes with a vote of four-fifths of such membership but not containing such emergency clause, same should be returned by the Comptroller, with a finding thereon that the appropriation therein exceeds the cash and anticipated revenue, to the House in which it originated. It would then have the same status as though it had never been voted upon, and would be subject to amendment as to either form or substance.

Yours very truly

ATTORNEY GENERAL OF TEXAS

WVG:mmc;bt

APPROVED:

*Price Daniel*
ATTORNEY GENERAL

By

*W. V. Geppert*

W. V. Geppert
Assistant